ROGERS, Justice.
 

 The plaintiff, Joe Schultz, brought this suit against the Texas & Pacific Railway Company, seeking to recover $13,132.25, the'alleged value of scrap materials belonging to him which he claimed had been converted by defendant to its own use. In his petition, plaintiff alleged that he had leased from the Texas & Pacific Railway Company a small tract of land in the City of Shreveport to be used by him “for storing scrap iron, supplies and machinery,” his business being the buying and selling of that class of property; that on July 19, 1937, plaintiff was the owner of and in possession of approximately 300 tons of scrap iron, pip’e, machinery and similar materials located on the leased premises, and that on said date, without any process, right or authority whatever, the defendant railway company forcibly took pos-' session of all these materials and converted them to its own use. An inventory purportedly made at the time of the removal of the materials was annexed to the petition.
 

 Defendant answered, admitting the execution of the lease, denying that defendant was the owner of the scrap materials in question and alleging that the materials were its property. Defendant reconvened for the value of the materials which had been removed by plaintiff from the leased premises.
 

 The case went to trial on these issues and judgment was rendered in favor of plaintiff for the sum of $3,067. From this judgment defendant appealed.
 

 The record discloses that under date of March 30, 1935, for a stipulated monthly rental of $5, defendant railway company leased to plaintiff a small tract of land in Shreveport “for storage of juñk.” The lease contained the following provision, which is the basis of the controversy between the parties, viz.:
 

 “In the event this lease is terminated by notice or otherwise the lessee agrees to vacate said premises and remove therefrom before the expiration date, any building, structure, or property it may have erected or placed thereon; and if within the time specified the lessee shall fail to remove from said premises said building, structure, or property, the same shall become forfeited to, and the title thereof shall become vested in the Lessor, should the Lessor so desire.”
 

 On September 23, 1936, defendant wrote plaintiff calling his attention to certain claimed violations of the lease, and on December 1, 1936, defendant wrote plaintiff notifying him to vacate the leased premises by December 16, 1936. On January 7, 1937, defendant again wrote plaintiff, calling his attention to the previous notice and requesting him to start removing his
 
 *629
 
 materials at once. On February 6, 1937, the railway company instituted an ejectment suit against Schultz, in the City Court of Shreveport, asking for a judgment ordering Schultz to vacate the leased premises and deliver the possession thereof to the railway company. The ejectment suit was tried and resulted in a judgment in favor ' of the railway company ordering Schultz to deliver possession of the leased premises to the company within ten days, in default of which the company was given the right to obtain a warrant directed to the marshal of the court commanding him to deliver to the company the full possession of the leased premises and to levy the cost out of such goods and chattels of Schultz as are allowed by law to be seized. The judgment also contained a reservation of the rights of the railway company to claim rent for the occupation of the premises, for damages thereto, and for the ownership of all buildings, structures and property erected or placed thereon by Schultz, which Schultz had failed to remove therefrom, title to which had become vested in the railway company under the lease.
 

 On February 25, 1937, a writ of possession was issued and served on Schultz, but the writ was never executed. In July, 1937, the railway company sent seventeen empty cars and some loading machinery to the leased premises and, over the protest of Schultz, took possession of all the materials thereon, loaded them into cars, and removed them to Marshall, Texas, where they were unloaded and destroyed or converted to the use of the company. This suit followed to recover the alleged value of the property removed and allegedly converted by the railway company.
 

 The first contention of the defendant railway company is that having failed to prove ownership of the materials removed from the leased premises, plaintiff was not entitled to any recovery therefor.
 

 The testimony shows that plaintiff was engaged in the business of buying scrap materials and junk; that the materials removed from the leased premises by the defendant had been acquired by plaintiff in the year 1930 and, subsequent years, some of the materials having been placed on the leased premises as recently as six months prior to the filing of this suit. Plaintiff bought the materials as scrap and junk from the Henderson Iron Works, Sparco, and from numerous other concerns and persons. In its answer, defendant claimed ownership of the property by virtue of its lease to plaintiff, that is to say, that it acquired title to the property through plaintiff. Defendant always recognized the ownership of plaintiff, frequently requested him to remove the materials, and even filed suit against plaintiff to obtain their removal. We find no merit in defendant’s contention.
 

 The plaintiff, Joe Schultz, contends that under the doctrine of ejusdem generis, the hereinabove quoted clause of the lease does not cover materials stored on the leased premises, but only structures, buildings and similar property erected or placed thereon; that the defendant railway company is estopped to claim a forfeiture; that such provision is against public policy, and some
 
 *631
 
 other things which are not necessary to mention.
 

 In deciding the case, the trial judge pretermití ed any discussion of plaintiff’s contentions relative to the application of the doctrine ejusdem generis, the effect of the forfeiture clause of the lease as to the materials stored on the leased premises, and the claim that the provision in the lease is against public policy. The trial judge said, in his reasons' for judgment: “Granting that the doctrine of ejusdem generis is not applicable,' that the forfeiture clause covers materials stored thereon, and that same is not against public policy, the question still remains as to whether or not the lessor could exercise such rights in the manner in which it did after securing a judgment ordering the lessee to remove Same and without any notice whatever that it was going to exercise such right. Undoubtedly, no written notice was ever given.”
 

 The trial judge further found that the only evidence relative to notice is shown in the testimony of W. M. McVeigh, 'Jr., for defendant and Joe Schultz in his own behalf; that Mr. McVeigh, who is the Traveling Land and Industrial Agent of the Texas & Pacific Railway Company, testified that some three or four months before the railway company removed the scrap materials and junk from the leased premises, he told Mr. Schultz that if “he did not remove it in accordance with the order of court, that the railway company would remove it and take it as theirs.” Mr. Schultz, testifying in his own behalf, stated that he saw Mr. McVeigh “every once, in a while” about the removal of the property; that Mr. McVeigh told -him that he had better get the stuff off of there, but never claimed that the railway company owned the property until the morning the agents of the company appeared at the leased premises and started to load his materials on its cars.
 

 The casual and isolated statement of Mr. McVeigh that he told plaintiff if he did not remove the property in accordance with the order of court, the railway company would remove it and take it as theirs, even if true, cannot be considered as notice of any intention on the part of the railway company to declare a forfeiture. Mr. Schultz denied that any such statement was made.
 

 The judgment of the City Court of Shreveport did not authorize the railway company to remove Schultz’s property from the leased premises and convert it to its own use. The remedy of the railway company under the judgment was to obtain a warrant directed to the marshal of the court, commanding him to remove the property and to take the cost thereof out of the proceeds of its sale.
 

 In construing the lease, the trial judge correctly held:
 

 “If the phrase ‘should the lessor so desire’ had been left out of the contract, then there would have been an ipso facto forfeiture brought about by the failure to remove within the specified time. We think the legal effect of the phrase being in the contract removed any ipso facto forfeiture, but granted to the lessor the right or
 
 *633
 
 option to declare a forfeiture. We do not think that the right or option to declare a forfeiture was lost or effected in any way by instituting suit and ordering the lessee to remove, for that right was especially reserved in the judgment; but for the railroad to swoop down and remove the material without first having declared a forfeiture and so notifying the other party was going beyond the reasonable construction of the contract. Forfeitures are not favored; they are strictly construed, and will not be maintained unless it is plain that every reasonable- requirement of the contract has been followed.”
 

 In assessing the damages claimed by defendant, the trial judge found that the railway company had not acted maliciously; that the actions of Mr. Schultz were exasperating; that he had every opportunity to remove his materials and did not do so; and that he was entitled only to the reasonable and proven value of the materials, which the trial judge fixed at the sum of $3,067.
 

 Plaintiff has answered the appeal, praying that the judgment be increased from $3,067 to $9071.50. The basis of plaintiff’s demand for an increase in the judgment is his ’claim that a large amount of his materials was not just junk or scrap but was more valuable as useable materials.
 

 The testimony on the question of the value of the materials is wholly contradictory, 'brought about apparently from a different point of view of the witnesses. The trial judge found that the materials were, generally speaking, in a -very bad condition and worth nothing like what plaintiff claimed they were worth. With certain exceptions, the trial judge fixed the value of the materials on the basis of scrap. The exceptions on which a higher value than that of scrap was placed were the boiler flues, oil barrels and ice cans, angle irons, channel iron and shafting. The defendant claims that the value placed by the trial judge on the materials removed from the leased premises is entirely too high, and that the correct value thereof should be fixed at not more than $1958.50. The basis of this contention is that the scrap materials included a lot of rubbish which was not even valuable as junk, and that the trial judge, in rendering his judgment, failed to take this fact into account. From our reading of the testimony we find nothing to cause us to differ from the findings of the trial judge as to the character of the materials removed from the leased premises or as to the values placed by him thereon.
 

 For the reasons assigned, the judgment herein appealed from is affirmed.
 

 O’NIELL, C. J., does not take part