YARRUT, Judge.
Plaintiffs appeal from a judgment of the District Court dismissing their suit against Defendants.
Plaintiffs are members of a partnership doing business under the name of Girard & Trosclair, and will be referred to herein as the Partnership. Defendants will be referred to herein, respectively, as the Lumber Company and the Railroad.
The Partnership leased from the Railroad two contiguous vacant lots of ground located in Lafayette, La., under separate leases, one executed July 1, 1944, and the other June 25, 1945, identified as “Audit No. 35559” and “Audit No. 37264,” each for a period of one year, with either party’s right to cancel upon a 30-day written notice. The leases also contained a provision that, upon the failure of the Partnership to remove any improvements it built on the leased property within thirty days after notice of cancellation by either party, the Railroad had the right to retain the same without cost, or have the same removed at the Partnership’s expense.
The Partnership leased the premises for storage and shipment of sweet potatoes in-carload lots, from which the Railroad expected to benefit in freight haulage.
Both leases were renewed annually at their expiration by reconduction for a total of twelve successive years. The Railroad approved the Partnership’s subleasing the lot in litigation to the Lumber Company for three years, subject to the conditions of its prime lease with the Partnership.
The Railroad later directly leased this lot, Audit No. 35559, with its improvements, to the Lumber Company at a lower rental than the Lumber Company paid the Partnership under its sublease from the Partnership. The Partnership claims it is entitled to receive from Defendants the rent it would have received under its original sublease with the Lumber Company, less the amount of rent it was required to pay under its primary lease with the Railroad, and $10,750.00, the value of the improvements it erected on the Railroad’s lot.
The decisive issue is whether or not the Railroad gave the Partnership the required 30-day written notice of its termination of the lease, Audit No. 35559, which, if so, entitled it to lease the lot and its improvements direct to the Lumber Company, following the failure of the Partnership to remove the improvements.
In furtherance of its decision to lease direct to the Lumber Company, the Railroad addressed to the Partnership two letters of cancellation in July 1956, one covering each lease. Inadvertently, only the letter cancelling lease Audit No. 37264 was mailed to the Partnership. Plaintiff-Girard, who handled the Partnership’s business affairs, was in Europe at the time, so Plaintiff-Trosclair consulted his personal attorney about the letter of cancellation from the Railroad. The attorney, after conferring with the Partnership’s regular attorneys, wrote the Railroad requesting an extension of time for the Partnership to vacate the premises, mentioning only lease Audit No. 37264. The Railroad answered the attorney’s letter on July 25, 1956, extending the time to August 30, 1956, for the Partnership to terminate and vacate under both leases, referring to both leases by their identifying numbers. This letter, addressed to the law firm, attention of the attorney who wrote to the Railroad for the extension, reads as follows:
“Your letter of July 24 written in behalf of Mr. A. J. Trosclair and asking that we withhold action in regard to cancellation of leases, our Audit Numbers 35559 and 37264 with Girard & Trosclair on account of Mr. Girard’s absence from this country.
*360 “This is to advise that the 30 day-period set out in my letter of July 11, 1956 advising of the termination of said leases is hereby extended until August 30, 1956, this with the understanding that the premises covered by said leases will be cleared of improvements and surrendered to the railroad company by said date.”
Upon receiving the Railroad’s answer, the attorney notified Plaintiff-Trosclair of the extension, but did not show him the letter nor mention that it referred to cancellation and termination of both leases, rather than only the one (Audit No. 37264) he referred to in his letter to the Railroad requesting time for Plaintiff to vacate. The attorney testified that the reference to cancellation of “two leases” in the Railroad’s letter completely escaped him, and he simply advised Trosclair that the extension had been granted and thought no more of the matter.
There is no evidence of payment by Plaintiffs of rent for the property in question after this time. Plaintiff-Girard testified that his last check (the date of which he could not remember) was returned, which created suspicion in his mind, as he testified: “I was getting suspicious that they were going to terminate.” When pressed if he thought the lease had been terminated, or whether he thought the property was being let rent-free, he could not remember. Any doubt he may have had as to the status of the Partnership lease had to be put at rest when he received a letter from the Lumber Company, dated December 6, 1956, enclosing a check with the following explanation:
“We are enclosing herewith our check for $250.00 covering rent in full for the property we formally leased from you at 210 North Pierce Street.
“Inasmuch as our lease with the Southern Pacific Lines began on September 1st ours also naturally terminated with you on this date.”
Concerning this letter, Mr. Girard testified:
“Q. Now, you think you did see it and that it caused you to believe you didn’t have a lease?
“A. This is my recollection, yes.”
Further, as to Plaintiffs’ theory of a continuing or reconducted lease was his answer on cross-examination:
“Q. What did the railroad do after September 1, 1956, which caused you to think you did have a lease ?
“A. Nothing.”
When Trosclair engaged his attorney to write the Railroad about a 30-day extension to vacate the lot covered by lease Audit No. 37264, the attorney became an agent for the Partnership and acted in its behalf. When the Railroad addressed its reply to the attorney, the attorney received it on behalf of the Partnership for all purposes. Knowledge of an attorney is imputed to his client as it relates to the matter entrusted to the attorney.
LSA-Civil Code, Article 3000, reads:
“Powers granted to persons, who exercise a profession, or fulfill certain functions, or doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise.”
The Railroad’s letter to the attorney was clear, in that it specifically referred to the cancellation of both leases, Audit No. 35559 and Audit No. 37264, not alone to Audit No. 37264; hence, was adequate notice of cancellation of both leases as of August 30, 1956. The improvements made by the Partnership not having been removed within the thirty days following notice of cancellation, they became the property of the Railroad, without cost to it.
Plaintiffs could not compel the Lumber Company to buy the improvements. *361 They either had to abandon them to the Railroad without cost, or incur the expense of demolition and removal. Plaintiffs made no demand upon the Railroad for permission to demolish and remove the improvements. LSA-Civil Code, Article 2726; Schultz v. Texas & P. Ry. Co., 191 La. 624, 186 So. 49; Le Blanc v. Barielle, La. App., 25 So.2d 638.
For the reasons assigned, the judgment of the District Court is affirmed; Plaintiffs to pay costs in both courts.
Affirmed.